KLOOSTER v CITY OF CHARLEVOIX

Docket No. 286013. Submitted November 9, 2009, at Lansing. Decided December 15, 2009, at 9:10 a.m.

Nathan Klooster petitioned the Tax Tribunal for the review of a determination of the board of review of the city of Charlevoix to affirm a city tax assessor's determination that there had been a transfer of ownership of the subject real property in 2005 that, pursuant to MCL 211.27a(3), required reassessment of the taxable value of the property. The property was originally acquired by petitioner's parents, as tenants by the entirety, by warranty deed in 1959. In 2004, petitioner's mother quitclaimed her interest to petitioner's father, who thereafter, as the sole owner, quitclaimed the property to himself and petitioner as joint tenants with rights of survivorship. Petitioner's father died in 2005, and petitioner became the sole owner of the property. In 2006 the subject reassessment occurred. The Tax Tribunal affirmed, viewing the death of petitioner's father as causing a transfer of ownership. Petitioner appealed.

The Court of Appeals *held*:

1. Section 27a(7)(h) of the General Property Tax Act, MCL 211.27a(7)(h), provides that when there is a transfer between two or more persons that creates or terminates a joint tenancy, it will not constitute a transfer of ownership within the meaning of MCL 211.27a(3), first, if at least one of the persons was an original owner of the property before the joint tenancy was initially created, or second, if at the time of the conveyance, the property is held as a joint tenancy and at least one of the persons was a joint tenant when the joint tenancy was initially created and that person has remained a joint tenant since that time.

2. The first requirement of § 27a(7)(h) is satisfied because the petitioner's father was an original owner of the property before the joint tenancy was initially created.

3. The second conditional requirement of § 27a(7)(h) is not applicable because the property was not held as a joint tenancy at the time that petitioner's father, as the sole owner, quitclaimed the property to himself and petitioner as joint tenants with rights of survivorship.

4. The term "conveyance" for purposes of the second element of § 27a(7)(h) requires that there be some instrument in writing affecting the title of the real property. The petitioner's father's death was not a conveyance because no instrument in writing was created that affected the title to the subject real estate.

5. There was no transfer of ownership because petitioner meets the first requirement of § 27a(7)(h) and the second requirement is not applicable. The Tax Tribunal erred by affirming the tax assessment. The order of the Tax Tribunal must be reversed and the case must be remanded for further proceedings.

Reversed and remanded.

TAXATION — REAL PROPERTY — JOINT TENANCIES.

A transfer between two or more persons that creates or terminates a joint tenancy does not constitute a transfer of ownership within the meaning of MCL 211.27a(3), which provides for the reassessment of the taxable value of real property upon a transfer of ownership, where at least one of the persons was an original owner of the property before the joint tenancy was originally created, or where, at the time of the conveyance the property is held as a joint tenancy and at least one of the persons was a joint tenant when the joint tenancy was initially created and has remained a joint tenant since that time; the term "conveyance" for purposes of the second conditional requirement requires that there be some instrument in writing affecting the title of the real property (MCL 211.27a[3], [7][h]).

*Law, Weathers & Richardson, P.C.* (by *Steven F. Stapleton* and *Crystal L. Rice*), for petitioner.

*Young, Graham & Elsenheimer, P.C.* (by *Bryan E. Graham*), for respondent.

Before: BORRELLO, P.J., and WHITBECK and K. F. KELLY, JJ.

PER CURIAM. In this tax dispute, we must decide, under the circumstances of this case, whether the death of a joint tenant constitutes a transfer of ownership within the meaning of § 27a, MCL 211.27a, of the General Property Tax Act (GPTA), MCL 211.1 *et seq.*

We hold it does not. Accordingly, the Michigan Tax Tribunal erred when it found that a transfer of ownership occurred that allowed the taxable value of the real property to be reassessed at a higher value. We reverse.

## I. BASIC FACTS

In 1959, James and Dona Klooster, petitioner's parents, acquired title by warranty deed to certain real property located in Charlevoix, Michigan. They held the property as tenants by the entirety. On August 11, 2004, Dona quitclaimed her interest to James. On the same day, James, now as the sole owner, quitclaimed the property to himself and petitioner as joint tenants with rights of survivorship. In January 2005, James died and, by operation of law, petitioner became the sole owner of the property. Subsequently, on September 10, 2005, petitioner executed a quitclaim deed creating a joint tenancy with rights of survivorship with his brother, Charles Klooster.

In 2006, petitioner received a notice of assessment from the city of Charlevoix. It stated that there had been a transfer of ownership in 2005[1] and, thus, it had reassessed the taxable value of the property using its true cash value, or market value, to determine the state equalized value. This process, commonly referred to as "uncapping," increased the taxable value of the property from $37,802 to $72,300.

Petitioner appealed this decision to the board of review, which adopted the tax assessor's decision without any explanation of its own. Petitioner appealed the board of review's decision to the Tax Tribunal. The Tax Tribunal affirmed the assessor's determination that

---

[1] The assessment notice did not identify the event that caused the "transfer of ownership."

there had been a transfer of ownership in 2005. In its view, James's death had caused the transfer of ownership and, thus, the taxable value of the property was properly uncapped. This appeal followed.

## II. APPLICABLE LAW

Historically, real property in Michigan was reassessed according to its true cash value on a yearly basis. However, in 1994, Michigan adopted the "Proposal A" amendment to Const 1963, art 9, § 3. Proposal A limited increases in property taxes absent a transfer in ownership " 'by capping the amount that the "taxable value" of the property may increase each year, even if the "true cash value," that is, the actual, market value, of the property rises at a greater rate.' " *Moshier v Whitewater Twp*, 277 Mich App 403, 405; 745 NW2d 523 (2007), quoting *WPW Acquisition Co v City of Troy*, 466 Mich 117, 122; 643 NW2d 564 (2002).

Consequently, the GPTA was amended in order carry out the mandate of Proposal A, and it now governs the processes by which property is taxed consistent with Proposal A's mandate. Thus, under the GPTA, when a transfer of ownership of a parcel of property does not occur, the taxable value of a parcel of property will be the lesser of (1) the property's current state equalized value or (2) the prior year's taxable value less any losses, "multiplied by the lesser of 1.05 or the inflation rate, plus all additions." MCL 211.27a(2). This provision functions to limit, or "cap," property tax increases when there has been no transfer of ownership. However, when there is a transfer of ownership, the taxable value is "uncapped" and a reassessed taxable value is set on the basis of the state equalized value in the year following the transfer of ownership. MCL 211.27a(3); *Signature Villas, LLC v City of Ann Arbor*, 269 Mich

App 694, 697; 714 NW2d 392 (2006). "Uncapping" typically results in a higher tax assessment, as is the case here.

Given the foregoing, whether a property's taxable value remains capped is intrinsically linked to whether there has been a "transfer of ownership." The GPTA defines "transfer of ownership" to mean "the conveyance of title to or a present interest in property, including the beneficial use of the property, the value of which is substantially equal to the value of the fee interest." MCL 211.27a(6). The GPTA provides a nonexhaustive list of events that will constitute a transfer of ownership, MCL 211.27a(6), and events that do not constitute such a transfer, MCL 211.27a(7).

Significantly, for purposes of this case, the GPTA includes the creation and termination of joint tenancies amongst those transfers that do not constitute a transfer of ownership, provided certain conditions are met. Specifically, § 27a(7)(h) of the GPTA states that a "transfer of ownership" does not include

> [a] transfer creating or terminating a joint tenancy between 2 or more persons if at least 1 of the persons was an original owner of the property before the joint tenancy was initially created and, if the property is held as a joint tenancy at the time of conveyance, at least 1 of the persons was a joint tenant when the joint tenancy was initially created and that person has remained a joint tenant since the joint tenancy was initially created. A joint owner at the time of the last transfer of ownership of the property is an original owner of the property. For purposes of this subdivision, a person is an original owner of property owned by that person's spouse. [MCL 211.27a(7)(h).]

Accordingly, when there is a transfer between two or more persons that creates or terminates a joint tenancy, it will not constitute a transfer of ownership within the meaning of MCL 211.27a(3) if (1) at least one of the

persons was an original owner of the property before the joint tenancy was initially created and, (2) *if the property is held as a joint tenancy at the time of conveyance,* at least one of the persons was a joint tenant when the joint tenancy was initially created and that person has remained a joint tenant since that time. See *Moshier, supra* at 409-410. The second requirement is a conditional requirement: it need only be met in instances where the property was held as a joint tenancy at the time of the conveyance; if the property was not so held, this requirement is inapplicable.

### III. ANALYSIS

Petitioner argues that the Tax Tribunal erred by determining that James's death constituted a transfer of ownership under § 27a(7)(h), MCL 211.27a(7)(h), of the GPTA.[2] We agree. Our review of the Tax Tribunal decision is limited to determining "whether the tribunal erred in applying the law or adopted a wrong principle . . . ." *Moshier, supra* at 407. Further, to the extent that we must construe the meaning of the statute, our review is de novo. *Signature Villas, LLC, supra* at 699. Our goal in interpreting a statutory provision is to ascertain the Legislature's intent. *Cain v Waste Mgt, Inc (After Remand),* 472 Mich 236, 245; 697 NW2d 130 (2005). This is accomplished by first examining to the language used. *TMW Enterprises Inc v Dep't of Treasury,* 285 Mich App 167, 172; 775 NW2d 342 (2009). If the language is plain and unambiguous,

---

[2] We note that although the tax assessor did not indicate what caused the "transfer of ownership" in 2005, the parties below and on appeal focus exclusively on James's death. Thus, it is not necessary for us to consider whether the creation of the joint tenancy with Charles in 2005 constituted a transfer of ownership. Accordingly, our decision in this matter focuses solely on whether James's death constitutes a transfer of ownership under the statute.

then we must apply the statute as written to the facts before us. *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 506; 778 NW2d 282 (2009). In such instances, judicial construction is neither necessary nor permitted. *Beattie v Mickalich*, 284 Mich App 564, 570; 773 NW2d 748 (2009).

Here, the first requirement of § 27a(7)(h) is satisfied. James and petitioner created a joint tenancy in 2004 by a quitclaim deed. Before this joint tenancy was created, James was an original owner of the property: He and his wife acquired the property by warranty deed in 1959. Thus, as the parties do not dispute, "at least 1 of the persons was an original owner of the property before the joint tenancy was initially created . . . ." MCL 211.27a(7)(h).

With respect to the second conditional requirement of § 27a(7)(h), we conclude that it is not applicable because the condition triggering the second mandate is not present in this matter. Specifically, and contrary to respondent's argument on appeal, James's death does not constitute a "conveyance" within the meaning of § 27a(7)(h). As already noted, under the plain language of § 27a(7)(h), the conditional requirement is only mandated in instances where the property was held as a joint tenancy *at the time of conveyance . . . ." Id. (emphasis added).* The GPTA does not define the term conveyance and, in such instances, we give undefined terms their plain and ordinary meaning and we may rely on dictionary definitions. *TMW Enterprises Inc, supra* at 172. We must also be cognizant of legal terms of art, which are to be accorded their peculiar and appropriate meanings. *Priority Health v Comm'r of the Office of Financial & Ins Services*, 284 Mich App 40, 45; 770 NW2d 457 (2009); MCL 8.3a. It is well established, as a legal term, that "conveyance" means every instru-

ment *in writing* which affects the title to any real estate. See MCL 565.35 (defining "conveyance"); *McMurtry v Smith*, 320 Mich 304, 307; 30 NW2d 880 (1948). Further, Black's Law Dictionary (8th ed) defines "conveyance" as "[t]he transfer of an interest in real property from one living person to another, by means of an instrument . . . [or the] document . . . by which such a transfer occurs." Accordingly, the term conveyance, as that term is used in the second element of § 27a(7)(h) and giving it its peculiar and appropriate meaning, requires that there be some instrument *in writing* affecting the title of the real property.

James's death was not a conveyance. While James's death had a de facto effect on the property's title, because by operation of law petitioner became the sole owner, the death did not, in effect, create a conveyance because no instrument *in writing* was created that affected title to the subject real estate. Rather, the most recent prior conveyance, as reflected on the record, occurred when the joint tenancy was created between James and petitioner in 2004. And, at that time, the property was not held as a joint tenancy, because James had a sole ownership interest in the real estate.

Respondent provides little support for its contention that James's death is a conveyance. It merely asserts that James's death terminated the joint tenancy and, thus, constituted a conveyance and it otherwise fails to provide its own definition of conveyance. We cannot adopt such an overly broad definition of that term, when it is plain that the word "conveyance" has acquired a particular legal meaning. If we were to do so, it would be contrary to the Legislature's clear intent, because we must presume that the Legislature is aware that the term "conveyance" is a legal term of art and intentionally chose to use it in lieu of some other broader, or narrower, one. See *Priority Health*, *supra* at 45.

Because the property was not held as a joint tenancy at the time the property was conveyed to James and petitioner, the conditional requirement set forth in § 27a(7)(h) simply does not apply.

## IV. CONCLUSION

Because petitioner meets the requirements of § 27a(7)(h), there was no transfer of ownership and the taxable value of the property should not have been uncapped under MCL 211.27a(3). The Tax Tribunal erred by affirming the tax assessment. Given our conclusion, we need not address petitioner's claim that the board of review failed to articulate sufficient reasons for its decision.

Reversed and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.