**Lansing, Michigan**

# Opinion

Chief Justice:

Robert P. Young, Jr.

Justices:

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

FILED MARCH 10, 2011

S T A T E   O F   M I C H I G A N

SUPREME COURT

NATHAN KLOOSTER,

        Petitioner-Appellee,

v

No. 140423

CITY OF CHARLEVOIX,

        Respondent-Appellant.

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

This case involves the General Property Tax Act (GPTA)[1] and two particular circumstances in which a conveyance of property may or may not permit a taxing authority to "uncap" and reassess the value of that property. Specifically, we granted leave to appeal to address whether a "conveyance" as that term is used in MCL 211.27a(3) must be by means of a written instrument and whether, under MCL 211.27a(7)(h), petitioner's property was uncapped for purposes of property-tax

---

[1] MCL 211.1 *et seq.*

reassessment by either the death of the other joint tenant in January 2005 or the creation of a subsequent joint tenancy in September 2005. *Klooster v Charlevoix*, 486 Mich 932 (2010). We hold first that a "conveyance" for purposes of MCL 211.27a does not require a written instrument. Second, we hold that while the January 2005 termination of the joint tenancy caused by the death of a cotenant was within the joint-tenancy exception created by MCL 211.27a(7)(h) and was thus not a transfer of ownership that uncapped the property, the September 2005 conveyance from petitioner to himself and his brother as joint tenants did uncap the property, because the conveyance did not fall within the joint-tenancy exception. Therefore, we reverse the judgment of the Court of Appeals and hold that respondent, the city of Charlevoix, properly issued its 2006 notice of reassessment and that the Tax Tribunal reached the correct result, albeit for the wrong reason.

## I. FACTS AND PROCEDURAL HISTORY

The facts are undisputed. In 1959, James and Dona Klooster acquired title to the subject property in the city of Charlevoix and held it as tenants by the entirety. On August 11, 2004, Dona quitclaimed her interest in the property to James, leaving James as the sole owner. On that same day, James quitclaimed the property to himself and his son, petitioner Nathan Klooster, as joint tenants with rights of survivorship. On January 11, 2005, James died, leaving petitioner as the sole property owner by operation of law. On September 10, 2005, petitioner quitclaimed the property to himself and his brother, Charles Klooster, as joint tenants with rights of survivorship.

In 2006, the assessor for the city of Charlevoix issued to petitioner and Charles

2

Klooster a notice of assessment, taxable valuation, and property classification, indicating that, because of a transfer of ownership, the property's taxable value had been reassessed using the true cash value of the property. The notice did not state whether the termination of the joint tenancy caused by the death of petitioner's father in January 2005 or the September 2005 creation of the joint tenancy between petitioner and his brother constituted the transfer of ownership. As a result of the reassessment, the taxable value of petitioner's property increased from $37,802 to $72,300.

Petitioner appealed unsuccessfully to the city's board of review. Petitioner then appealed to the Tax Tribunal. The Tax Tribunal affirmed the reassessment, ruling that the transfer of ownership to petitioner by virtue of his father's death was a conveyance for purposes of the GPTA. Additionally, the Tax Tribunal ruled that the joint-tenancy exception from MCL 211.27a(7)(h) did not apply to the January 2005 transfer because petitioner was not an original owner or an already existing joint tenant before the August 2004 joint tenancy was created. The Tax Tribunal did not rule on the September 2005 conveyance.

Petitioner appealed as of right in the Court of Appeals, claiming that the transfer of ownership caused by his father's death was not a conveyance, and that even if it had been, petitioner would have qualified for the MCL 211.27a(7)(h) exception from uncapping. The Court of Appeals reversed the tribunal, determining that a "conveyance" requires a transfer of title by a written instrument, and thus James's death and the resulting transfer of fee title to petitioner by operation of law did not constitute a transfer of ownership under the GPTA that would uncap the property. *Klooster v Charlevoix*, 286 Mich App 435, 441-443; 781 NW2d 120 (2009). We granted respondent's application

3

for leave to appeal. *Klooster*, 486 Mich at 932-933.

## II. STANDARD OF REVIEW AND RULES OF STATUTORY INTERPRETATION

"In the absence of fraud, review of a decision by the Tax Tribunal is limited to determining whether the tribunal erred in applying the law or adopted a wrong principle; its factual findings are conclusive if supported by competent, material, and substantial evidence on the whole record." *Mich Bell Tel Co v Dep't of Treasury*, 445 Mich 470, 476; 518 NW2d 808 (1994).

Issues of statutory interpretation are questions of law that are reviewed de novo. *Brown v Detroit Mayor*, 478 Mich 589, 593; 734 NW2d 514 (2007). The primary goal of statutory interpretation is to give effect to the Legislature's intent, focusing first on the statute's plain language. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). "The words of a statute provide 'the most reliable evidence of its intent . . . .'" *Id.*, quoting *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981). When construing a statute, a court must read it as a whole. *People v Jackson*, 487 Mich 783, 791; 790 NW2d 340 (2010).

## III. STATUTORY BACKGROUND

Resolving this case requires that we examine the January 2005 and September 2005 changes in the ownership of petitioner's property to determine whether respondent properly reassessed the property under the GPTA. We begin our analysis by briefly reviewing Proposal A and the GPTA before turning to the joint-tenancy exception and the specific conveyances at issue.

A.  PROPOSAL A AND THE GPTA

In 1994, voters passed Proposal A, amending article 9, § 3 of the Michigan Constitution to limit the annual increase in property tax assessments and to authorize enabling legislation.  The purpose of Proposal A was to limit tax increases on property as long as it remains owned by the same party, even though the actual market value of the property may have risen at a greater rate.  *Toll Northville Ltd v Northville Twp*, 480 Mich 6, 12; 743 NW2d 902 (2008).  The Michigan Legislature was charged with determining the specifics needed to give effect to Proposal A's mandate.  See Const 1963, art 9, § 3 (providing for the reassessment of a parcel's value when ownership has been transferred "*as defined by law*") (emphasis added).  The 1995 amendments of the GPTA[2] fixed the cap on assessment increases at the lesser amount of either 5 percent of the assessed value of the property for the previous year or the increase in the rate of inflation from the previous year.  MCL 211.27a(2).  After certain "transfer[s] of ownership" occur, however, property becomes uncapped and thus subject to reassessment based on actual property value.  MCL 211.27a(3).[3]

The GPTA defines "transfer of ownership" as a "conveyance of title to or a present interest in property, including the beneficial use of the property, the value of

---

[2] 1994 PA 415.

[3] MCL 211.27a(3) provides: "Upon a *transfer of ownership* of property after 1994, the property's taxable value for the calendar year following the year of the transfer is the property's state equalized valuation for the calendar year following the transfer." (Emphasis added.)

which is substantially equal to the value of the fee interest."[4]  MCL 211.27a(6) provides a nonexhaustive list of examples of transfers of ownership, including conveyances by deed or by land contract and conveyances to or distributions from trusts.  See MCL 211.27a(6)(a) through (j).  From the definition of "transfer of ownership," however, MCL 211.27a(7) excludes 17 specific transfers and conveyances, including the one found in MCL 211.27a(7)(h), regarding the creation and termination of certain joint tenancies.

### B.  THE JOINT-TENANCY EXCEPTION:  MCL 211.27a(7)(h)

The joint-tenancy exception from the definition of "transfer of ownership" provides that a transfer of ownership does not include

> [a] transfer creating or terminating a joint tenancy between 2 or more persons if at least 1 of the persons was an original owner of the property before the joint tenancy was initially created and, if the property is held as a joint tenancy at the time of conveyance, at least 1 of the persons was a joint tenant when the joint tenancy was initially created and that person has remained a joint tenant since the joint tenancy was initially created.  A joint owner at the time of the last transfer of ownership of the property is an original owner of the property.  For purposes of this subdivision, a person is an original owner of property owned by that person's spouse.  [MCL 211.27a(7)(h).]

While this is not the simplest provision to understand at first reading, a careful deconstruction reveals its plain meaning.  We begin by noting that MCL 211.27a(7)(h) establishes the requirements for excluding three types of conveyances from the definition of "transfer of ownership":  (A) the termination of a joint tenancy, (B) the creation of a joint tenancy where the property was not previously held in a joint tenancy, and (C) the

---

[4] MCL 211.27a(6).

6

creation of a successive joint tenancy.[5]

Before examining two requirements of the joint-tenancy exception, we must first take particular care to properly construe the terms "transfer of ownership" and "original owner." Additionally, when applying the joint-tenancy exception it is essential to focus on the particular conveyance that qualifies as the "conveyance at issue," especially if—as here—the parcel has been the subject of numerous conveyances, one or more of which may qualify as a transfer of ownership that uncaps the property. We discuss each of these terms in turn.

### 1. "TRANSFER OF OWNERSHIP"

For purposes of applying the joint-tenancy exception, the terms "transfer of ownership" and "uncapping event" are largely synonymous. The GPTA provides that "[u]pon a *transfer of ownership* of property . . . , the property's taxable value for the calendar year following the year of the transfer is the property's state equalized valuation for the calendar year following the transfer." MCL 211.27a(3) (emphasis added). Therefore, a transfer of ownership allows reassessment of the property based on its state equalized value, lifting the cap on the rate of increase provided by MCL 211.27a(2). A transfer of ownership thus uncaps the property. Conversely, any transaction listed in MCL 211.27a(7) is not a transfer of ownership that uncaps the property.

---

[5] See corresponding parts IV(A) through (C) of this opinion for discussions of these three types of conveyances under MCL 211.27a(7)(h).

## 2. "ORIGINAL OWNER"

To determine who is an "original owner of the property" within the narrow context of the joint-tenancy exception, one must first identify the most recent transfer of ownership that uncapped the property and then determine who owned the property as a result of that uncapping conveyance. The joint-tenancy exception provides that "[a] joint owner at the time of the last transfer of ownership . . . is an original owner" and that "[f]or purposes of this subdivision, a person is an original owner of property owned by that person's spouse." MCL 211.27a(7)(h). There are thus three possibilities for who may constitute an "original owner" under the joint-tenancy exception: (1) a sole owner at the time of the last uncapping event,[6] (2) a joint owner at the time of the last uncapping event,[7] and (3) the spouse of either a sole or joint owner of the property at the time of the conveyance at issue (i.e., the conveyance that may uncap the property). See *id.*

## 3. CONVEYANCE AT ISSUE

The "conveyance at issue" is either the creation or the termination of a joint

---

[6] While the statute does not specifically provide that a sole owner may be an original owner, this obvious result must follow, otherwise only a joint owner or the spouse of an owner could ever be considered an "original owner" for purposes of applying MCL 211.27a(7)(h).

[7] In the instant case, for example, the most recent uncapping event before the two 2005 conveyances at issue would have been in 1959, when James and Dona Klooster acquired title to the property, had Proposal A been in effect. Because James and Dona held the property in a tenancy by the entirety, they were "joint owner[s] at the time of the last [uncapping event]" and were thus "original owner[s] of the property."

8

tenancy that may or may not uncap the property for reassessment purposes.[8] The conveyance at issue, therefore, is not the preceding uncapping event used to determine who is an original owner of the property. If the conveyance at issue is the creation of a joint tenancy, it is important to determine whether the property is being conveyed from a previous joint tenancy or some other type of ownership estate when applying MCL 211.27a(7)(h). If the conveyance at issue is the termination of a joint tenancy, however, whether the joint tenancy being terminated is a successive joint tenancy is irrelevant under the MCL 211.27a(7)(h) analysis. At the termination of a joint tenancy, the identity of ownership before the creation of the joint tenancy is only relevant under the original-ownership requirement to ensure that the continuity of original ownership remains uninterrupted.

The conveyances at issue here, therefore, are the January 2005 and September 2005 conveyances because these are the conveyances that may or may not have uncapped the property.

### 4. THE ORIGINAL-OWNERSHIP AND CONTINUOUS-TENANCY REQUIREMENTS OF MCL 211.27a(7)(h)

The first sentence of MCL 211.27a(7)(h) establishes two requirements for satisfying the joint-tenancy exception, which we label to simplify analysis as the "original-ownership requirement" and the "continuous-tenancy requirement." The original-ownership requirement excludes "transfer[s] creating or terminating a joint

---

[8] See MCL 211.27a(7)(h) (referring to "[a] transfer creating or terminating a joint tenancy"). The term "conveyance at issue" is not used in the statute, but we employ it here to assist in remaining focused on the pertinent conveyance when, as here, property has been conveyed multiple times.

tenancy between 2 or more persons if at least 1 of the persons was an original owner . . . before the joint tenancy was initially created" from being considered a "transfer of ownership." MCL 211.27a(7)(h). This requirement examines ownership of the property both before and after the conveyance at issue to ensure that continuity of original ownership bridges the transfer.

The continuous-tenancy requirement provides that "if the property is held as a joint tenancy at the time of conveyance, at least 1 of the persons was a joint tenant when the joint tenancy was initially created and that person has remained a joint tenant since the joint tenancy was initially created." *Id.* Because of the conditional language "if the property is held as a joint tenancy at the time of conveyance," this requirement applies only to conveyances terminating a joint tenancy and conveyances creating a successive joint tenancy.[9] Because it pertains to the continuous tenancy of at least one of the joint tenants from the time a particular joint tenancy was created until the time of its termination, the continuous-tenancy requirement is entirely retrospective.

## IV. APPLYING THE JOINT-TENANCY EXCEPTION

All parties agree that the August 2004 conveyance from the father, James Klooster, to himself and petitioner as joint tenants with rights of survivorship was not an uncapping event because MCL 211.27a(7)(h) excludes such conveyances from the definition of "transfer of ownership." Because James did not hold the property in a joint tenancy before creating the joint tenancy with petitioner, the continuous-tenancy

_____

[9] By using the term "successive joint tenancy," we refer only to transfers conveying property from one joint tenancy directly into another joint tenancy.

10

requirement of MCL 211.27a(7)(h) was inapplicable. Under the original-ownership requirement of MCL 211.27a(7)(h), James Klooster "was an original owner of the property before the [August 2004] joint tenancy was initially created." James acquired the status of an original owner as a result of the 1959 conveyance to James and Dona because the 1959 conveyance was the most recent "transfer of ownership" that uncapped the property.[10] Put simply, under the joint-tenancy exception, an original owner may convey property into a joint tenancy without uncapping the property, provided the original owner is also a cotenant in the resulting joint tenancy.

We turn now to conveyances under the GPTA.

## A. TERMINATIONS OF JOINT TENANCIES

When petitioner's father died in January 2005, the joint tenancy terminated by operation of law, vesting petitioner with sole ownership. We first examine whether the change in the nature of the ownership of the property occasioned by the death of the only other joint tenant is even a conveyance, as that term is used in the GPTA.

## 1. CONVEYANCES UNDER THE GPTA

The Court of Appeals held that the vesting of sole ownership was not a conveyance because there was no written instrument. *Klooster*, 286 Mich App at 442. This was error. As we will explain, the termination of a joint tenancy occasioned by the

---

[10] We of course recognize that Proposal A was not enacted until 1994, well after the 1959 conveyance. Under Proposal A, however, the 1959 conveyance would have qualified as a transfer of ownership because, as the deed indicates, neither James nor Dona owned the property before purchasing it from Althea Ward.

11

death of the only other joint tenant is a conveyance under the GPTA and does not require a written instrument beyond that which initially created the joint tenancy.[11]

When one of only two joint tenants dies, an estate in land passes by operation of law to the survivor. This Court has described a joint tenancy with rights of survivorship as a joint life estate with a dual contingent remainder that vests the fee simple in whichever cotenant outlives the others. *Albro v Allen*, 434 Mich 271, 274-275; 454 NW2d 85 (1990). A contingent remainder is "[a] remainder that is either given to an unascertained person or made subject to a condition precedent." Black's Law Dictionary (9th ed), p 1405. The contingent remainder is thus created simultaneously with the creation of the joint tenancy with rights of survivorship and "'waits patiently' for possession." *Id.*, quoting Bergin & Haskell, Preface to Estates in Land and Future Interests (2d ed), p 73. In the case of a joint tenancy with rights of survivorship, the contingency is surviving the cotenants, and at the moment of death, the decedent's interest in the property passes to the survivor or survivors. *Albro*, 434 Mich at 274-275. When there is only one remaining joint tenant, the contingent remainder vests in the survivor a fee simple in the property. See *id.*

The interest that passes to the last survivor in a joint tenancy is likewise a conveyance under the GPTA. The GPTA defines "transfer of ownership" as a "*conveyance* of title to or a present interest in property, including the beneficial use of the property, the value of which is substantially equal to the value of the fee interest." MCL

_____

[11] As we will discuss, however, a conveyance will not constitute a transfer of ownership under the GPTA if excluded under MCL 211.27a(7)(a) through (q).

12

211.27a(6) (emphasis added). While the statute uses the word "conveyance," it does not define it, and we may therefore consult a dictionary. *Oakland Co Bd of Co Rd Comm'rs v Mich Prop & Cas Guaranty Ass'n,* 456 Mich 590, 604; 575 NW2d 751 (1998). The relevant dictionary definitions of "conveyance" include (1) "[a] voluntary transfer of a right or of property" and (2) "[t]he transfer of a property right that does not pass by delivery of a thing or merely by agreement." Black's Law Dictionary (8th ed).[12] Under the first definition, in the case of a joint tenancy with rights of survivorship, the "voluntary transfer of a right or of property" occurs when the joint tenancy is voluntarily created, transferring to the cotenants a joint life estate that gives the immediate right to possess and use the property as well as the last survivor's right to be vested with a fee simple. See *Albro*, 434 Mich at 274-275. The conveyance occasioned by the death of the only other cotenant fits the second definition as well, because the vesting of a fee simple at the moment of death in the last surviving cotenant is a "transfer of a property right that does not pass by delivery of a thing . . . ." Therefore, the interest that passes to the last survivor in a joint tenancy is a conveyance under the GPTA.

In holding that there was no conveyance absent a writing, the Court of Appeals erred by relying on the act-specific definitions of a "conveyance" in MCL 565.35[13] and in

---

[12] We recognize that the definitions of "conveyance" include the document itself. See definition 4 in Black's Law Dictionary (9th ed). However, we believe that a document such as a deed is a memorialization of the property interest being conveyed, not the conveyance itself, under the GPTA.

[13] MCL 565.35 provides, in relevant part. "The term "conveyance," as used in this chapter, shall be construed to embrace every instrument in writing, by which any estate or interest in real estate is created, aliened, mortgaged or assigned . . . ."

13

*McMurtry v Smith*, 320 Mich 304, 307; 30 NW2d 880 (1948). *Klooster*, 286 Mich App at 441-442. First, the definition of "conveyance" in MCL 565.35 is limited by the language "as used in this chapter," and MCL 211.27a is not in chapter 565 of the Michigan Compiled Laws.[14] Second, *McMurtry* involved the recording of a supplement to a plat, and it was thus appropriate for the *McMurtry* Court to rely on the definition of "conveyance" in the statutory predecessor of MCL 565.35 because from its inception and regardless of where in the statutes it has been compiled, the chapter at issue has embraced the recording statutes, and the recording of interests in real property necessarily includes the use of some written instrument.[15] Neither of these definitions of "conveyance," however, mandates the conclusion that there can be no conveyance without a writing under the GPTA.

Other examples of transfers of ownership in MCL 211.27a illustrate that the definition of "conveyance" in MCL 565.35 is inconsistent with the meaning of "conveyance" in the GPTA. Conveyances to a trust, distributions from a trust, and conveyances by intestate succession do not require any written instrument at the time of the transfer, yet all are transfers of ownership that will uncap property. See MCL

---

[14] In the statute's first incarnation, "this chapter" referred to chapter 65 of the Revised Statutes of 1846. The provision remained the same through numerous compilations and eventually was compiled in the first part of chapter 565 of the Michigan Compiled Laws, specifically MCL 565.1 through 565.49. It is not completely clear whether "this chapter" now refers to all of chapter 565 or only that portion corresponding to chapter 65 of the Revised Statutes of 1846.

[15] See 1929 CL 13309, designated in the 1948 Compiled Laws and subsequent compilations as MCL 565.35.

211.27a(6)(c), (d) and (f). Therefore, the plain text of MCL 211.27a indicates that the Legislature did not intend that conveyances must be effected by means of a written instrument for purposes of the GPTA.

In sum, therefore, we conclude that the vesting of a fee simple in the last surviving cotenant of a joint tenancy with rights of survivorship is a "conveyance" for purposes of the GPTA and requires no additional writing beyond that which created the joint tenancy. Whether this conveyance is a transfer of ownership that uncaps the property is a separate issue.

## 2. THE JANUARY 2005 CONVEYANCE

The GPTA defines "transfer of ownership" as a "conveyance of title to or a present interest in property, including the beneficial use of the property, the value of which is substantially equal to the value of the fee interest." MCL 211.27a(6). Unless an applicable exception exists, the interest that vests in the last survivor in a joint tenancy with rights of survivorship *would* constitute a transfer of ownership because the fee simple that vests in the survivor is a "conveyance of title . . . , the value of which is substantially equal to the value of the fee interest." *Id.*

With regard to *terminations* of joint tenancies, MCL 211.27a(7) provides that a transfer of ownership does not include

> [a] transfer . . . terminating a joint tenancy between 2 or more persons if at least 1 of the persons was an original owner of the property before the joint tenancy was initially created and, if the property is held as a joint tenancy at the time of conveyance, at least 1 of the persons was a joint tenant when the joint tenancy was initially created and that person has remained a joint tenant since the joint tenancy was initially created.

15

In this context, the conveyance at issue is the termination of the joint tenancy because that is the event that may or may not uncap the property. In order for the termination of a joint tenancy to be exempted from uncapping, the original-ownership requirement mandates that at least one of the joint tenants in the joint tenancy being terminated was an original owner of the property before the joint tenancy was initially created. And, under the continuous-tenancy requirement, at least one of the persons in the joint tenancy being terminated must have been "a joint tenant *when* the joint tenancy was initially created," and that person must have "remained a joint tenant since the joint tenancy was initially created." *Id.* (emphasis added).

Here lies the critical point of contention in this case. Petitioner argues that "when" refers to that point in time at which the joint tenancy was created—not before—and that because petitioner was a joint tenant *as a result of* the creation of the joint tenancy at that point in time, he satisfies the requirement. Respondent argues that this use of "when" means that at least one of the persons in the joint tenancy must have also been a joint tenant in an immediately preceding joint tenancy. Because the father held the property in sole ownership, respondent argues, neither petitioner nor his father were joint tenants "when the joint tenancy was initially created." Essentially, respondent argues that the joint-tenancy exception applies only to successive joint tenancies.[16] Respondent thus reads "when" to mean "before." We disagree.

---

[16] Holding that the MCL 211.27a(7)(h) exception in the context of terminations applies only to successive joint tenancies would read an additional requirement into the statute and establish a pointless procedural mandate. In the instant case, for example, under the erroneous successive-joint-tenancy interpretation, had James and Dona Klooster transferred the property from a tenancy by the entirety into a joint tenancy before creating

16

The adverb "when" refers to a distinct point in or period of time. See *The American Heritage Dictionary, Second College Edition* (1982) (defining "when" as "[a]t the time that" and "during the time at which"). "When" is not complete in itself, however, and requires some contextual referent to the event or period of time to which it applies. As "when" is used in the joint-tenancy exception, it is not durational; it refers to the moment in time "when the joint tenancy was initially created . . . ." MCL 211.27a(7)(h). At that moment, each cotenant acquired the status of a joint tenant by virtue of the instrument creating the joint tenancy. Had the Legislature meant to say "before," it would have done so, as it did earlier in the joint-tenancy exception (i.e., "if at least 1 of the persons was an original owner of the property *before* the joint tenancy was initially created"). *Id*. (emphasis added).

We hold, therefore, that as applied to terminations of joint tenancies, the plain text of MCL 211.27a(7)(h) does not apply only to successive joint tenancies. For purposes of applying the continuous-tenancy requirement of the joint-tenancy exception, a person who becomes a joint tenant as a result of a conveyance is "a joint tenant when the joint tenancy was initially created." We can now apply the joint-tenancy exception to the January 2005 conveyance.

The vesting of the fee simple in petitioner that occurred as a result of the death of James Klooster met the original-ownership requirement of MCL 211.27a(7)(h) because James Klooster was a cotenant and "was an original owner of the property before the

a successive joint tenancy between James and petitioner, the property would not have been uncapped by the death of James. There is no indication that the Legislature intended to benefit only those taking such elaborate steps.

17

joint tenancy was initially created." Because the property was held as a joint tenancy at the time of the conveyance, we must also apply the continuous-tenancy requirement that "at least 1 of the persons was a joint tenant when the joint tenancy was initially created and that person has remained a joint tenant since the joint tenancy was initially created." As explained, because petitioner was a joint tenant "when" James initially created the joint tenancy in August 2004 and "remained a joint tenant since the joint tenancy was initially created"—until the joint tenancy terminated—the January 2005 conveyance was not a transfer of ownership under MCL 211.27a(7)(h).

We therefore hold that the January 2005 conveyance did not uncap the property. As we will explain, however, the September 2005 conveyance was a transfer of ownership that did uncap the property.

## B.  CREATION OF A NONSUCCESSIVE JOINT TENANCY

When petitioner conveyed the property to himself and his brother in September 2005, the property went from a state of sole ownership into a new joint tenancy. Before applying the joint-tenancy exemption to the September 2005 conveyance, however, we first address preservation of the issue.

## 1.  PRESERVATION

Our order granting leave to appeal asked the parties to address preservation of the September 2005 conveyance as a possible uncapping event. See MCR 7.302(H)(4)(a) (limiting appeals to issues raised in an application "[u]nless otherwise ordered"); MCR 7.316(A)(3) (allowing this Court to "permit the reasons or grounds of appeal to be amended or new grounds to be added").

18

We note first that the fact of the September 2005 conveyance has always been part of the record on which this case was decided below and that the notice of reassessment in evidence was addressed to both petitioner and Charles Klooster. That the Tax Tribunal and Court of Appeals chose to focus only on the January 2005 conveyance occasioned by the death of James Klooster does not remove these facts from evidence. In addition, the preservation requirement is not an inflexible rule; it yields to the necessity of considering additional issues when "'necessary to a proper determination of a case . . . .'" *Prudential Ins Co of America v Cusick*, 369 Mich 269, 290; 120 NW2d 1 (1963), quoting *Dation v Ford Motor Co*, 314 Mich 152, 160-161; 22 NW2d 252 (1946). Although this issue was not decided below, a party "should not be punished for the omission of the trial court." *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). Lastly, an appellate court may uphold a lower tribunal's decision that reached the correct result, even if for an incorrect reason. See *Mulholland v DEC Int'l Corp*, 432 Mich 395, 411 n 10; 443 NW2d 340 (1989); *Peninsular Constr Co v Murray*, 365 Mich 694, 699; 114 NW2d 202 (1962).

We therefore find it appropriate to consider the September 2005 conveyance as a possible uncapping event because the facts are properly before us, the parties briefed and argued the issue in this Court, and doing so is necessary to a proper determination of this case.

### 2. THE SEPTEMBER 2005 CONVEYANCE

In September 2005, petitioner—who held the property in sole ownership as a result of the January 2005 vesting of the fee simple—conveyed the property to himself

and his brother as joint tenants. In the context of the creation of a nonsuccessive joint tenancy, we need only consider the original-ownership requirement of MCL 211.27a(7)(h) because, as previously discussed, the continuous-tenancy requirement applies only if the property was held in a joint tenancy at the time of the conveyance. As applied to the creation of a nonsuccessive joint tenancy, the joint-tenancy exception provides that "[t]ransfer of ownership does not include . . . [a] transfer creating . . . a joint tenancy between 2 or more persons if at least 1 of the persons was an original owner of the property before the joint tenancy was initially created . . . ."

The September 2005 conveyance was not excluded from the definition of "transfer of ownership" in MCL 211.27a(6) because, under the original-ownership requirement, petitioner was not an "original owner of the property before the joint tenancy was initially created." MCL 211.27a(7)(h). As explained, the most recent event that would have been an uncapping event was the 1959 conveyance to petitioner's parents, James and Dona Klooster. *Only* James or Dona Klooster could qualify as an original owner until the time of the next uncapping event. Because the August 2004 and January 2005 conveyances were excluded by MCL 211.27a(7)(h) from the definition of "transfer of ownership," neither conveyance constituted an uncapping event and petitioner did not acquire the status of an original owner of the property. See MCL 211.27a(6). Because petitioner was not an original owner of the property before he initially created the joint tenancy with his brother, the September 2005 conveyance did not satisfy the joint-tenancy

20

exception of MCL 211.27a(7)(h).[17]  The September 2005 conveyance was therefore a transfer of ownership that uncapped the subject property.

Therefore, respondent properly issued the notice of assessment, taxable valuation, and property classification in 2006 because of a transfer of ownership in 2005, and the Tax Tribunal reached the correct result, albeit for the wrong reason.

## C.  CREATION OF SUCCESSIVE JOINT TENANCIES

Although not essential to resolving this case, we hope to provide some limited guidance by specifically addressing how MCL 211.27a(7)(h) *would* apply to the creation of a successive joint tenancy.  If the property was held in joint tenancy before the conveyance *creating* a successive joint tenancy, the original-ownership requirement mandates that there must have been an "original owner of the property" before the joint tenancy was initially created who is also a joint tenant in the successive joint tenancy. The continuous-tenancy requirement pertains to the immediately preceding joint tenancy and requires that at least one of the persons in the previous joint tenancy must have been "a joint tenant when the [previous] joint tenancy was initially created," and that same person must have "remained a joint tenant since the [previous] joint tenancy was initially created."

---

[17] We note, however, that both petitioner and Charles Klooster now qualify as original owners of the property for purposes of MCL 211.27a(7)(h) because each is a joint owner and "[a] joint owner at the time of the last transfer of ownership of the property is an original owner of the property."  Because it uncapped the property, the September 2005 conveyance was a "transfer of ownership" under MCL 211.27a(6).

## V. CONCLUSION

We reverse the judgment of the Court of Appeals and hold first that a "conveyance" for purposes of MCL 211.27a need not be by means of a written instrument. We hold also that while the January 2005 conveyance to petitioner of a fee simple was excluded by MCL 211.27a(7)(h) from the GPTA's definition of "transfer of ownership," the September 2005 conveyance from petitioner to himself and his brother in joint tenancy was not exempted from uncapping, and therefore respondent city of Charlevoix properly issued the notice of assessment, taxable valuation, and property classification in 2006. Therefore, we reinstate the decision of the Tax Tribunal because it reached the correct result, albeit for an incorrect reason.

Michael F. Cavanagh
Robert P. Young, Jr.
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

22