*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

MICHIGAN AMBULATORY SURGICAL
CENTER,

UNPUBLISHED
March 19, 2025
11:20 AM

Plaintiff-Appellant,

v

No. 368231
Macomb Circuit Court
LC No. 2022-000578-NF

LIBERTY MUTUAL INSURANCE COMPANY
and NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY,

Defendants-Appellees.

Before: YOUNG, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Plaintiff, Michigan Ambulatory Surgical Center, appeals as of right the trial court's order granting the motion for summary disposition filed by defendant Nationwide Mutual Fire Insurance Company under MCR 2.116(C)(10). As part of its appeal, plaintiff also challenges the trial court's earlier order granting the motion for summary disposition filed by defendant Liberty Mutual Insurance Company under MCR 2.116(C)(8) and (10). For the reasons explained in this opinion, we affirm in part and vacate in part the trial court's decision to grant Liberty Mutual's motion for summary disposition, reverse the trial court's decision to grant Nationwide's motion for summary disposition, and remand for further proceedings.

## I. BACKGROUND

This case arose after plaintiff treated Corey Jefferson for injuries Jefferson sustained in a February 3, 2020 motor-vehicle collision. At the time of the collision, Jefferson was driving a car insured by Liberty Mutual. Liberty Mutual issued the policy insuring the car to "Brittany Johnson."[1]  Jefferson testified that he was not married to Johnson when the collision occurred,

---

[1] Jefferson testified that Johnson's name was spelled "Brittney" and that she had since changed her last name to "Jefferson."

-1-

though they lived together and got married later that same year. Jefferson testified that, as a result of the accident, he developed pain running from his right shoulder to the top of his neck. Jefferson initially tried physical therapy to treat the injury, but he eventually had to have surgery. Jefferson could not remember the extent of his injuries but recalled being diagnosed with a torn rotator cuff. Jefferson's surgery was performed by plaintiff. On July 10, 2021, Jefferson assigned to plaintiff his rights to collect no-fault benefits for the services that plaintiff performed.

On February 9, 2022, plaintiff filed a one-count complaint against Liberty Mutual alleging that Liberty Mutual was refusing to pay personal protection insurance (PIP) benefits that it owed plaintiff. On April 25, 2022, plaintiff filed an amended complaint in which it realleged its claim for unpaid no-fault benefits against Liberty Mutual and added the Michigan Automobile Insurance Placement Facility (MAIPF) as a defendant to that claim.

On December 28, 2022, Liberty Mutual moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that plaintiff was not entitled to benefits from Liberty Mutual because Liberty Mutual was not in the order of priority under MCL 500.3114(4). Liberty Mutual explained that it issued a policy to Johnson, and Jefferson—plaintiff's assignor—was not named in the policy, nor was he Johnson's spouse or relative. This, according to Liberty Mutual, meant that Liberty Mutual did not have to provide benefits to Jefferson under MCL 500.3114(1), so plaintiff, as Jefferson's assignee, needed to seek benefits from the MAIPF under MCL 500.3114(4). In other words, Liberty Mutual argued that it was "nowhere in the order of priority," which required plaintiff to seek benefits from the assigned claims plan.

Plaintiff responded to Liberty Mutual's motion on January 23, 2023, arguing that Liberty Mutual's motion was premised on the mistaken belief that Jefferson was not covered under the relevant policy. Plaintiff contended that the relevant portion of the policy defined an "insured" as "anyone" injured while "occupying" a "covered auto," which clearly included Jefferson, and Liberty Mutual agreed to provide PIP benefits to "insureds" under the policy. It did not matter, plaintiff argued, whether Liberty Mutual had to provide benefits to Jefferson under MCL 500.3114(1) because, "under foundational principles of freedom of contract," Liberty Mutual could agree to provide PIP benefits to people that it was not statutorily required to insure.

The trial court held a hearing on Liberty Mutual's motion and took the matter under advisement. On February 21, 2023, the trial court issued an opinion and order granting Liberty Mutual's motion for summary disposition. The court agreed with Liberty Mutual that the insurer was not required to provide benefits to Jefferson under MCL 500.3114(1), then turned to plaintiff's argument that Liberty Mutual nevertheless agreed to insure Jefferson under the policy it issued to Johnson. Rejecting this argument, the court concluded, "Because PIP benefits are mandated by the no-fault act, this Court must find that Plaintiff's arguments regarding the expansion of coverage are unavailing." The court added that "there is no evidence that Johnson paid additional premiums for" the "optional coverage" that plaintiff contended the policy provided.

Shortly before the trial court issued its ruling on Liberty Mutual's motion, the court entered a stipulated order substituting Nationwide as a defendant in place of the MAIPF. Thereafter, on July 21, 2023, Nationwide moved for summary disposition under MCR 2.116(C)(10), arguing that Jefferson's health insurer, Health Alliance Plan (HAP), was the primary insurer for Jefferson's medical expenses under the policy HAP issued to Jefferson, so plaintiff had to seek payment from

HAP before seeking payment from Nationwide. Nationwide based its argument on the fact that Jefferson's policy with HAP coordinated benefits with no-fault coverage; the HAP policy stated, "If you have coverage under a coordinated no-fault insurance policy, then coverage under [the HAP policy] is considered the primary plan," and the no-fault coverage is "considered the secondary plan." Nationwide contended that it had a coordinated no-fault policy with Jefferson because, under MCL 500.3172(5), PIP benefits through the assigned claims plan "must be reduced to the extent that benefits covering the same loss are available from other sources," and "other sources" included health-insurance policies available to the claimant. This, Nationwide argued, required concluding that "Jefferson's No-Fault coverage for allowable medical expenses coordinates with his health insurance coverage through HAP such that HAP is primary for payment of his allowable expense benefits . . . ."

In response, plaintiff observed that Jefferson did not have a policy with Nationwide—let alone a coordinated policy—because Nationwide was merely the MAIPF-assigned insurer to Jefferson's claim. This wholly refuted Nationwide's argument, plaintiff contended, because HAP's policy stated that it was the primary insurer *if* Jefferson had a coordinated no-fault policy.

The trial court heard argument on Nationwide's motion on August 28, 2023. During the hearing, the trial court asked Nationwide's counsel whether Nationwide had a policy with Jefferson, and Nationwide confirmed that it did not. The parties otherwise argued in line with their briefing, and the trial court took the matter under advisement.

In a September 27, 2023 opinion and order, the trial court granted Nationwide's motion for summary disposition. The court reasoned that MCL 500.3172 was "a coordination statute," and that Jefferson's health insurance through HAP was a benefit covering the same loss such that Nationwide was entitled to a setoff under MCL 500.3172(5). On the basis of these conclusions, the court held that plaintiff was required to seek payment from HAP before seeking payment from Nationwide, and accordingly granted summary disposition in favor of Nationwide.

This appeal followed.

## II. STANDARD OF REVIEW

The trial court granted summary disposition in favor of both Liberty Mutual and Nationwide under MCR 2.116(C)(10).[2] A trial court's decision to grant or deny summary disposition is reviewed de novo. *Neal v Wilkes*, 470 Mich 661, 664; 685 NW2d 648 (2004). A motion filed under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, in the light most favorable to the party opposing the motion." *Id*. at 119-120. A motion for summary disposition under MCR 2.116(C)(10) is properly granted when a claim presents no genuine issue of material fact and the

---

[2] While Liberty Mutual moved for summary disposition under both MCR 2.116(C)(8) and (10), the trial court clearly granted summary disposition in favor of Liberty Mutual solely under MCR 2.116(C)(10) because the court considered evidence outside the pleadings.

moving party is entitled to judgment as a matter of law. *Bazzi v Sentinel Ins Co*, 502 Mich 390, 398; 919 NW2d 20 (2018). A genuine issue of material fact exists if, after drawing all reasonable inferences in favor of the nonmoving party, the record leaves open an issue on which reasonable minds could differ. *Campbell v Kovich*, 273 Mich App 227, 229; 731 NW2d 112 (2006).

### III. LIBERTY MUTUAL

Plaintiff first challenges the trial court's decision to grant Liberty Mutual's motion for summary disposition. Liberty Mutual's argument in support of its motion was premised on MCL 500.3114, which provides in relevant part:

(1) Except as provided in subsections (2), (3), and (5),[3] a personal protection insurance policy described in [MCL 500.3101(1)] applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. . . .

\* \* \*

(4) Except as provided in subsections (2) and (3), a person who suffers accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle who is not covered under a personal protection insurance policy as provided in [MCL 500.3114(1)] shall claim personal protection insurance benefits under the assigned claims plan under [MCL 500.3171 to MCL 500.3175]. . . .

There is no dispute that, at the time of the February 2020 collision, Jefferson was not named in Johnson's policy with Liberty Mutual, nor was he Johnson's spouse or relative domiciled in the same household. This means that Jefferson was "not covered under a personal protection insurance policy as provided in [MCL 500.3114(1)]," so, under Subsection (4), plaintiff, as Jefferson's assignee, was required to "claim person protection insurance benefits under the assigned claims plan." This is where the analysis ends as a matter of statutory interpretation.

The goal of statutory interpretation is to give effect to the Legislature's intent. *Sunrise Resort Ass'n, Inc v Cheboygan Co Rd Comm*, 511 Mich 325, 334; 999 NW2d 423 (2023). This starts with examining the words of the statute, as that is "the most reliable evidence of" the Legislature's intent. *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011) (quotation marks and citation omitted). When a statute is unambiguous, it "must be enforced as written," and "[n]o further judicial construction is required or permitted." *Madugula v Taub*, 496 Mich 685, 696; 853 NW2d 75 (2014) (quotation marks and citation omitted).

Because plaintiff's assignee, Jefferson, was "not covered under a personal protection insurance policy as provided in [MCL 500.3114(1)]," plaintiff "shall claim personal protection insurance benefits" from the MAIPF. MCL 500.3114(4). The word "shall" connotes a mandatory directive. *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982). MCL

---

[3] It is uncontested that MCL 500.3114(2), (3), and (5) do not apply.

500.3114(4)'s mandatory directive applies to a person not covered under a no-fault policy *as provided in Subsection (1)*. Applying the statute's plain language, it does not matter for purposes of Subsection (4) whether the person is otherwise covered by a no-fault policy; if a person is not covered by a no-fault policy as provided in MCL 500.3114(1), then Subsection (4) requires the person to claim benefits through the assigned claims plan.

Plaintiff argues that the current version of MCL 500.3114(4) should not apply, and that the version in effect in May 2019 when Johnson's policy was issued should apply,[4] because applying the current version would "impair Jefferson's contractual rights under the subject policy." Plaintiff's contention that Jefferson had a vested right in Johnson's policy with Liberty Mutual when the policy issued is incorrect; a party's rights under an insurance policy "vest[] at the time of the accident." *Clevenger v Allstate Ins Co*, 443 Mich 646, 656; 505 NW2d 553 (1993). See also *Depyper v Safeco Ins Co of Am*, 232 Mich App 433, 435 n 2; 591 NW2d 344 (1998) (explaining that the "rights and obligations under an insurance policy vest at the time of the accident"). When the at-issue collision occurred, the current version of MCL 500.3114(4) was in effect.

Plaintiff alternatively argues that Liberty Mutual should be required to pay Jefferson's no-fault benefits because it agreed to do so in the policy it issued to Johnson. In support of this argument, plaintiff correctly notes that this Court recently held that a no-fault insurer may provide coverage broader than the no-fault act requires. See *Mapp v Progressive Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359889); slip op at 11-12 ("[W]e conclude that a no-fault insurance policy may provide broader coverage than that mandated by the no-fault act, even with respect to a mandated coverage such as PIP benefits."). But even if plaintiff is correct that Jefferson was covered by Johnson's policy with Liberty Mutual, plaintiff fails to explain why this would relieve it of MCL 500.3114(4)'s requirement that plaintiff "claim personal protection insurance benefits under the assigned claims plan." Entitlement to PIP benefits is governed by the no-fault act, see *Meemic Ins Co v Fortson*, 506 Mich 287, 297-298; 954 NW2d 115 (2020), and plaintiff has not offered any way around MCL 500.3114(4)'s mandatory language requiring plaintiff to claim PIP benefits through the assigned claims plan.[5]

---

[4] That version provided:

> (4) Except as provided in subsections (1) to (3), a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:

> (a) The insurer of the owner or registrant of the vehicle occupied.

> (b) The insurer of the operator of the vehicle occupied. [MCL 500.3114, as amended by 2016 PA 347.]

[5] While not mentioned by plaintiff, we note that MCL 500.3172(1)(a) provides:

That said, we vacate the trial court's opinion and order to the extent that it could be read as holding that Liberty Mutual's policy did not extend coverage to Jefferson. We are affirming the trial court based solely on the fact that, under MCL 500.3114(4), plaintiff was required to seek benefits through the assigned claims plan. The insurer assigned to plaintiff's claim (Nationwide) may wish to seek reimbursement from Liberty Mutual under the policy Liberty Mutual issued to Johnson, and we see no reason to foreclose that potential remedy as part of this action. Neither this opinion nor the trial court's opinion bar Nationwide from pursuing reimbursement from Liberty Mutual under the policy it issued to Johnson.

## IV. NATIONWIDE

Plaintiff next argues that the trial court erred by granting Nationwide's motion for summary disposition. Nationwide's argument in support of its motion for summary disposition was premised on MCL 500.3172(5), which states:

> (5) Except as otherwise provided in this subsection, *personal protection insurance benefits*, including benefits arising from accidents occurring before March 29, 1985, *payable through the assigned claims plan must be reduced to the extent that benefits covering the same loss are available from other sources*, regardless of the nature or number of benefit sources available and regardless of the nature or form of the benefits, to a person claiming personal protection insurance benefits through the assigned claims plan. This subsection only applies if the personal protection insurance benefits are payable through the assigned claims plan under subsection (1)(a), (b), or (d). As used in this subsection, "sources" and "benefit sources" do not include the program for medical assistance for the medically indigent under the social welfare act, 1939 PA 280, MCL 400.1 to

---

> (1) A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may claim personal protection insurance benefits through the assigned claims plan if any of the following apply:

> (a) No personal protection insurance is applicable to the injury.

While reading this subsection in isolation seems to support that whether Jefferson was covered by Johnson's policy with Liberty Mutual is significant, our Supreme Court in *Esurance Prop & Cas Ins Co v Michigan Assigned Claims Plan*, 507 Mich 498, 514; 968 NW2d 482 (2021), explained that "[t]he mere existence of an insurance policy that ostensibly covers a claimant does not *ipso facto* render it a policy 'applicable to the injury' under MCL 500.3172(1)(a)," and "[t]o know if there is such an 'applicable' policy, courts must perform an order-of-priority analysis . . . ." For the reasons explained above, there is no question of fact that Liberty Mutual was not in the order of priority for plaintiff's claim, so there was no policy "applicable to" Jefferson's injury under MCL 500.3172(1)(a). See *Esurance*, 507 Mich at 516 (holding that "there was no policy 'applicable to the injury' " under MCL 500.3172(1)(a) based on the Court's "order-of-priority analysis").

-6-

400.119b, or health insurance for the aged and disabled under subchapter XVIII of the social security act, 42 USC 1395 to 1395lll. [Emphasis added.]

Nationwide contended that Jefferson's health insurance through HAP covered his injuries because Jefferson's policy with HAP allowed for coordination with no-fault coverage as follows:

6.4 Coordination with No-Fault Automobile Coverage

The following rules apply with respect to medical care needed as the result of an automobile accident:

a. If You have coverage under a coordinated no-fault insurance policy, then coverage under this Policy/Contract is considered the primary plan. The no-fault automobile coverage would be considered the secondary plan.

b. If You have coverage under a non-coordinated no-fault insurance policy, then the automobile coverage is considered the primary plan. Coverage under this Policy/Contract would be considered the secondary plan.

The trial court erred by granting Nationwide's motion for summary disposition because Nationwide failed to establish that Jefferson's policy with HAP covered the same loss that Nationwide was covering. See MCL 500.3172(5). For Jefferson's policy with HAP to be "considered the primary plan" for "medical care needed as the result of an automobile accident," Jefferson needed to have "coverage under a coordinated no-fault insurance policy." For the HAP policy to "be considered the secondary plan" for "medical care needed as the result of an automobile accident," Jefferson needed to have "coverage under a non-coordinated no-fault insurance policy." It follows that, to coordinate any benefits for "medical care needed as the result of an automobile accident" under Jefferson's policy with HAP, Jefferson needed to have coverage under a no-fault policy. It is undisputed that Jefferson did not have coverage *under a no-fault policy* with Nationwide, and Nationwide does not argue that Jefferson had coverage under any other no-fault policy.[6] Consequently, coverage for "medical care needed as the result of an automobile accident" was not available under Jefferson's policy with HAP, so the HAP policy does not provide "benefits covering the same loss" for purposes of MCL 500.3175(5).

The trial court based its decision to the contrary on the fact that MCL 500.3172(5) is a "coordination statute," and Nationwide, citing *George v Allstate Ins Co*, 329 Mich App 448, 460; 942 NW2d 628 (2019), emphasizes on appeal that "coverage through the MAIPF functions as coordinated coverage as a matter of law." Certainly, MCL 500.3172(5) "provides for coordination

---

[6] While we are leaving open the possibility that Jefferson may be covered by Johnson's policy with Liberty Mutual, resolution of that issue does not affect the current analysis. If Jefferson is covered by Johnson's policy with Liberty Mutual, then Nationwide would, at most, be entitled to recover from Liberty Mutual.

of benefits," as this Court recognized in *George*, 329 Mich App at 460.[7]  But the mere fact that benefits *could* be coordinated under Jefferson's policy with HAP does not mean that they automatically were.  Again, it is undisputed that Jefferson did not have coverage under a no-fault policy with Nationwide, and because Nationwide does not argue that any other no-fault policy covered Jefferson's injuries, not only not only was the HAP policy not the "primary plan" for "medical care needed as the result of an automobile accident," it was also not the "secondary plan" for such medical care under the policy's plain language.[8]

Because Jefferson's policy with HAP did not cover the injuries he sustained as a result of the February 2020 motor-vehicle collision, Nationwide was not entitled to reduce the benefits it owed Jefferson (and consequently plaintiff, as Jefferson's assignee) under MCL 500.3172(5) on the basis of the HAP policy.  The trial court accordingly erred by granting summary disposition in favor of Nationwide on this basis.

## V.  CONCLUSION

The trial court correctly granted summary disposition in favor of Liberty Mutual because, under MCL 500.3114(4), plaintiff was required to seek PIP benefits through the assigned claims plan.  This conclusion is not dependent on whether Liberty Mutual extended coverage to persons like Jefferson under the policy it issued to Johnson, and the trial court's opinion is vacated insofar as it ruled on the extent of that policy's coverage.  The trial court also erred by granting Nationwide's motion for summary disposition for the reasons explained, so that decision is reversed.  If Nationwide ultimately pays benefits on behalf of Jefferson, it is is free to seek reimbursement from Liberty Mutual under the policy Liberty Mutual issued to Johnson—nothing in either this opinion or the trial court's opinion should be construed as barring this remedy.

---

[7] When *George* was decided, MCL 500.3172(5) was located in MCL 500.3172(2) and used slightly different language that is not relevant for purposes of this appeal.  See MCL 500.3172, as amended by 2012 PA 204.

[8] This reasoning dispenses with Nationwide's argument that reading the HAP policy as this opinion does "produces a contradictory result."  Nationwide's argument in this respect fails to consider the possibility that the HAP policy may simply not apply to medical care Jefferson needed as a result of the motor-vehicle collision.

We acknowledge that the policy that Liberty Mutual issued to Johnson is non-coordinated, so if Jefferson was covered under that policy, then the HAP policy would be the "secondary plan" for Jefferson's injuries.  This does not affect the current analysis because, as noted, it has not been established that Jefferson was covered by the Liberty Mutual policy, and even if Jefferson was covered by that policy, it would at most entitle Nationwide to recovery against Liberty Mutual.

The trial court's order granting Liberty Mutual's motion for summary disposition is affirmed in part and vacated in part, the trial court's order granting Nationwide's motion for summary disposition is reversed, and the case is remanded for further proceedings. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle