*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ALLAN GREGORY JONES, JR.,

        Defendant-Appellant.

UNPUBLISHED
August 19, 2021

No. 351788
Saginaw Circuit Court
LC No. 17-044501-FC

Before: GADOLA, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

A jury convicted defendant, Allan Gregory Jones, Jr., of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm, MCL 750.224f, carrying a weapon with unlawful intent, MCL 750.226, and three counts of possession of a firearm during the commission of a felony (third offense), MCL 750.227b. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to serve life in prison without parole for first-degree premeditated murder, 72 months to 55 years' imprisonment for felon-in-possession, and 72 months to 55 years' imprisonment for carrying a weapon with unlawful intent, which are to be served consecutive to and preceded by concurrent terms of 10 years' imprisonment for each felony-firearm count. Defendant appeals as of right. We affirm.

## I. FACTS

Defendant's convictions arise from the shooting death of Zebedee Love on April 10, 2016, in the parking lot of P and F Market. Love sustained nine gunshot wounds, and other smaller wounds as a result of his movement after first being shot in the leg. During trial, Dr. Kanu Virani, the medical examiner, testified that "[a]ll three gunshot wounds in the shoulder and one in the pelvis area were immediately fatal."

Surveillance footage from inside P and F Market showed that Love entered the store at 11:24 p.m. and exited at 11:28 p.m. Simmie Green, Love's friend, testified that he went to the store with Love. Green stated that he entered and exited the store at the same time as Love. Upon exiting, Love walked out in front of Green; seconds later, Green heard gunfire, took cover, and

then went back into the store. There was no external surveillance footage that recorded the P and F Market parking lot on the night Love was killed.

Leia Brewer testified that she was in the parking lot of P and F Market when Love was repeatedly shot. According to Brewer, Love was shot in the leg, after which he fell to the ground and rolled underneath his car. Brewer identified defendant as the shooter, testifying that he was wearing all black. Brewer further stated that after the first shot to the leg defendant continued to approach Love and shoot at him.

Tekeyia Wallis, Love's cousin, had known defendant since she was a kid. Wallis testified to hearing on speakerphone the conversation between defendant and Love on April 9, 2016:

*Q.* Did you recognize [defendant's] voice on the phone?

*A.* Yes.

*Q.* Do you know what sort of conversation was said?

*A.* [Defendant and Love] were just going back and forth and I just remember [defendant] saying I know where you be at, I'm gonna get'cha, and that was the end of the conversation.

In addition, Wallis witnessed defendant often drive by her home when Love was visiting her in the days before Love's murder. Wallis also saw defendant on the night of April 10, 2016 wearing an "all-black hoodie outfit."

Brandon Pratt grew up with defendant and knew Love. Pratt was not Love's friend and, in fact, testified at defendant's trial that he was glad that Love was dead. Additionally, Pratt testified that he spoke to defendant about Love's death in February of 2017 while incarcerated at the Saginaw County Jail. During this conversation, defendant discussed Love's murder, as indicated in the following testimony from Pratt:

*Q.* [Defendant] mention anything regarding the murder of Mr. Love?

*A.* Yes.

*Q.* What did he say?

*A.* He said he got him. He shot him and he rolled under the car and he kept shooting, said he swiss-cheesed him.

*Q.* He said he swiss-cheesed him?

*A.* Yeah, meaning like he shot him up.

*Q.* Like multiple times?

*A.* Yeah.

A jury convicted defendant of first-degree premeditated murder, felon in possession of a firearm, carrying a weapon with unlawful intent, and three counts of possession of a firearm during the commission of a felony (third offense). Before sentencing, defendant filed a motion for a new trial. Defendant argued that the testimony of Brewer and Pratt was not believable, and that no exhibits or other witnesses supported Brewer's testimony. Defendant further argued, inter alia, that the jury's verdict was against the great weight of the evidence. The trial court denied defendant's motion. Defendant now appeals his convictions to this Court.

## II. ANALYSIS

On appeal, defendant argues that the prosecutor committed misconduct during closing arguments, and that the trial court erred when it allowed testimony from an eyewitness about her cancer diagnosis. Further, defendant argues that he is entitled to a new trial because the verdict was against the great weight of the evidence. Lastly, defendant argues that he should be resentenced because the trial court had discretion to waive court costs.

In addition, defendant, through counsel and in his Standard 4 brief,[1] raises the issue of ineffective assistance of counsel. Defendant also alleges juror bias in his Standard 4 brief, and that the trial court erred when it denied his motion for dismissal without a hearing.

### A. PROSECUTORIAL MISCONDUCT

Defendant contends that the prosecution committed misconduct during closing arguments by bolstering Brewer's testimony and vouching for her credibility. Defendant also contends that the prosecution misstated evidence and appealed to the fears and prejudices of the jury. We disagree with each contention.

"To preserve a claim of prosecutorial misconduct, the defendant must make a timely and specific objection to the conduct at trial." *People v Clark*, 330 Mich App 392, 433; 948 NW2d 604 (2019). In this case, defendant failed to object to the prosecutor's alleged errors during closing arguments. Because of this, defendant has not preserved these issues for appellate review.

Our Court reviews unpreserved arguments for plain error affecting substantial rights. *People v Seals*, 285 Mich App 1, 4; 776 NW2d 314 (2009). A criminal defendant must show that error occurred, "the error was plain, i.e., clear or obvious," and that the plain error affected his or her substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

"Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). "The prosecutor's statements are to be evaluated in light of defense

---

[1] An appellate brief filed in propria persona by a criminal defendant pursuant to Michigan Supreme Court Administrative Order No. 2004-6, Standard 4.

arguments and the relationship the comments bear to the evidence admitted at trial." *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017) (quotation marks and citation omitted). "Generally, prosecutors are given great latitude regarding their arguments and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *Id*. (Quotation marks and citation omitted).

### 1. WITNESS VOUCHING AND THE MISCHARACTERIZATION OF EVIDENCE

During closing arguments, "[a] prosecutor need not confine argument to the blandest of all possible terms, but has wide latitude and may argue the evidence and all reasonable inferences from it." *People v Aldrich*, 246 Mich App 101, 112; 631 NW2d 67 (2001) (quotation marks and citations omitted). However, although a prosecutor may argue from the evidence that a witness is credible, *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997), a prosecutor may not vouch for the credibility of a witness "to the effect that [the prosecutor] has some special knowledge concerning a witness'[s] truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). Additionally, "[a] prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *People v Unger*, 278 Mich App 210, 241; 749 NW2d 272 (2008).

Here, defendant first challenges the following statement made by the prosecutor during the rebuttal portion of closing arguments that addresses Brewer's identification of defendant as a shooter:

> [Brewer] knows at least the identity of one of those shooters to be [defendant]. She may have mentioned Alvin Pratt was the second shooter. Alvin Pratt very well could be the second shooter. That does not negate his guilt. *I'm not ethically putting her on the stand unless she's absolutely positive of an identity of a shooter*, and that's what she told you. [Emphasis added.]

Reviewing the prosecutor's rebuttal arguments as a whole, the prosecutor never expressed or implied special knowledge about Brewer or her testimony. In fact, the challenged statement was made in response to defendant's trial attorney's closing argument that Brewer was an unreliable witness.[2] Defendant is correct that Brewer's testimony during the preliminary examination regarding a possible second shooter contrasted what she testified to during defendant's trial. But, the evaluation of such conflicting testimony is a credibility determination made by the finder of fact. *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020) (reiterating that this Court will not interfere with a jury's role in assessing the credibility of witnesses). Further, Brewer testified during cross-examination that she knew right away that defendant was a shooter, and the prosecutor merely commented on this testimonial evidence in response to defendant's trial

---

[2] Defendant's trial counsel argued, in relevant part:

> And always remember [Brewer], at a prior occasion, lied under oath just about drinking, you know. If she will lie about that, she will lie about anything. Again, it's not that we have to prove anything, the defense about Leia Brewer. I'm just pointing out why she's not believable.

attorney's closing argument. Aside from that, the record and defendant's brief provide no indication how the prosecutor's statement about Brewer's identification exerted improper influence over the jury, personally vouched for Brewer's credibility, or communicated special knowledge about her.

Next, defendant contends that the prosecutor bolstered Brewer's testimony, by arguing during rebuttal that

> [Defense counsel] wants you to think [Brewer] was just drunk out of her mind, didn't know what she saw and she's a liar. Well, she's had the *exact same story for three and a half years*, so a lot of details might change, but this is not a perfect science. [Emphasis added.]

Defendant cites general legal rules in support of his argument, but failed to elaborate a legal analysis, particularly by not citing mandatory or persuasive authority or making specific references to the trial court record. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

Regarding the same statement, defendant also contends that the prosecutor mischaracterized testimonial evidence and falsely stated that Brewer "had the exact same story for three and a half years." The shooting death of Love occurred on April 10, 2016; Brewer first spoke to police on October 5, 2017; and the prosecutor made rebuttal arguments on September 19, 2019. This Court notes that it is not outside the realm of possibility that the prosecutor was referring to the time between the shooting death of Love and closing arguments, which was a little over three years and five months. Furthermore, although Brewer delayed speaking to police, there was no evidence presented to the jury that indicated Brewer had claimed at any point that defendant was not a shooter. In fact, Brewer testified that she immediately identified defendant as a shooter when she "first heard the gun." The prosecutor reflected on these facts by reminding the jury in rebuttal that "details might change," but Brewer's account that defendant was a shooter in the death of Love had not. Accordingly, defendant's argument that the prosecutor mischaracterized Brewer's testimony is without merit.

Last, defendant argues that the prosecutor mischaracterized Wallis's testimony when she stated in closing arguments: "And Miss Wallis told you getting closer up to the murder, this was becoming more frequent. It was an everyday thing that [defendant] would drive by her home." Although defendant raises this issue, he does little to expand on a cursory presentation to this Court, such as by providing legal authority that analyzes similar instances of prosecutorial misconduct. Also, "[t]his Court will not search the record for factual support for a party's claim[,]" *McIntosh v McIntosh*, 282 Mich App 471, 485; 768 NW2d 325 (2009), and, in this case, citations to the record that might prove the falsity of the prosecutor's statement. In short, defendant fails to show how the prosecutor's statement about Wallis's testimony equates to substantial error and significantly impacted the jury and its deliberations.

Nonetheless, the prosecutor used the phrase "an everyday thing" to describe defendant's habit of driving by Wallis's home when Love was present. "Everyday" means: "encountered or used routinely or typically." *Merriam-Webster's Collegiate Dictionary* (11th ed). The prosecutor's use of the phrase "an everyday thing" was a fair characterization of Wallis's testimony that in the time period before the shooting, defendant had started driving by her house "every other day until [Love] got murdered," which described a routine activity. Moreover, the prosecutor did not mischaracterize the substance of Wallis's statement and its relevance, which was that the relationship between defendant and Love was hostile and that defendant had frequently driven past Wallis's home while Love was present. Therefore, defendant's argument that the prosecutor's statement about Wallis's testimony was a mischaracterization of the evidence fails.

## 2. APPEAL TO JUROR FEARS AND PREJUDICES

A prosecutor is permitted to comment on the evidence and all reasonable inferences arising from it, *Aldrich*, 246 Mich App at 112, but "should not resort to civic duty arguments that appeal to the fears and prejudices of jury members," *Bahoda*, 448 Mich at 282. In this case, during rebuttal arguments, the prosecutor stated:

> [Defense counsel] also made mention that my whole case is revolved around two liars, basically, and I want you to remember. I asked each witness every single question. One of those questions was what are the consequences of snitching. What are the consequences of testifying in open court in a murder trial. All of those witnesses told you your life. You get murdered for doing that. Your family gets threatened for doing that. All those witnesses told you my life, my children's life, my mother's life, my grandmother's life. I'm scared for myself and for them. Do you think any of these people left here and just walked outside and felt completely safe and weren't looking over their shoulder? Think any of these people went to bed that night and felt safe and weren't looking out their window to see if people weren't driving by? It doesn't make sense that all of these people would testify knowing the consequences of testifying in a murder trial against someone if it was a lie.

Defendant contends that the prosecutor testified through these remarks, which were intended to inflame the jury and create an atmosphere of fear unsupported by the evidence.

However, in this portion of closing arguments, the prosecutor responded to defendant's trial attorney and commented on testimonial evidence from Brewer and Pratt. For instance, Brewer stated during trial that her life could be in danger as a result of testifying against someone in open court in a murder trial. Brewer shared a similar fear for her kids and family. Likewise, Pratt expressed fear for his family as a result of his testimony, but not for himself. Based on this, the prosecutor's remarks do not reflect an attempt to inflame the jury, or serve as an unsworn witness as defendant claims. Rather, the prosecutor contrasted the credibility attacks against Brewer and Pratt by addressing the testimonial evidence of each about the potential consequences of testifying in open court according to neighborhood norms.

Moreover, the prosecutor did not argue that the fears of Brewer and Pratt should be used to directly support a conviction, and she did not allege that defendant personally threatened

anyone. Rather, the prosecutor argued that the decision of Brewer and Pratt to testify in open court, despite concerns of retribution, enhanced their credibility. Thus, defendant's contention that the prosecutor appealed to the fears and prejudices of the jury fails.

### 3. CONCLUSION

Lastly, to the extent that the prosecutor's closing arguments could be perceived as improper, the trial court instructed the jury that the statements and arguments by the prosecution and defendant's trial counsel were not evidence, and that the jury was to decide defendant's case solely on the evidence admitted during trial. M Crim JI 3.5. The trial court further instructed that the jury should "only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge." *Id*. Because of this, this Court presumes that jurors followed "their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). In sum, defendant has not shown plain error or that the prosecutor committed misconduct during closing arguments.

### B. ELICITING SYMPATHY FOR BREWER

Defendant argues that the trial court denied his right to a fair trial when it allowed the prosecutor to elicit testimony from Brewer that was irrelevant and unduly prejudicial. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *Aldrich*, 246 Mich App at 113. Defendant did not object to Brewer's testimony about her cancer diagnosis, so his argument regarding this testimony is unpreserved. Accordingly, defendant's argument is reviewed for plain error affecting substantial rights. See *Seals*, 285 Mich App at 4.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Relevant evidence is admissible; irrelevant evidence is not." *People v Dixon-Bey*, 321 Mich App 490, 512; 909 NW2d 458 (2017), citing MRE 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. Put another away, MRE 403 "prohibits evidence that is *unfairly* prejudicial." *Dixon-Bey*, 321 Mich App at 513. "[E]vidence is unfairly prejudicial when there exists a danger that marginally probative evidence might be given undue weight by the jury." *Id*.

Defendant specifically objects to the following exchange between the prosecution and Brewer:

> *Q*. Miss Brewer, I don't mean to be offensive or insensitive when I say this but you do look slightly different as you do today.
>
> *A*. Yeah. Due to me having cervical cancer, I have lost a lot of weight, so --

Defendant maintains that this testimony from Brewer caused the jury to sympathize for her, and boosted her credibility when she testified to identifying defendant as a shooter. In this Court's view, Brewer's testimony was relevant and not unduly prejudicial.

While questioning Brewer as the internal surveillance footage from P and F Market was played for the jury, the prosecutor asked Brewer to identify individuals depicted in the footage, including herself. Brewer's presence at P and F Market was relevant, considering that defendant called witnesses who claimed they were at P and F Market on the night of April 10, 2016, and denied seeing Brewer. The prosecutor used the internal surveillance footage to support the theory that Brewer was present at P and F Market and witnessed the shooting death of Love. For this reason, the prosecutor's question was designed to provide the jury with an explanation as to why Brewer's physical appearance on the night of April 10, 2016, contrasted with how she looked at defendant's trial on September 12, 2019. This explanation was necessary to confirm to the jury that Brewer was indeed the person on the internal surveillance footage.

In addition, Brewer's testimony about her cervical cancer diagnosis was not unduly prejudicial. We do not believe the fact that Brewer had cancer would cause the jury to find her testimony in this case any more credible, and defendant offers no persuasive reason why this might be the case.

Furthermore, this was a single reference in a lengthy murder trial, and the record provides no indication that the prosecutor knew beforehand that Brewer would explain the difference in her appearance by mentioning her cervical cancer diagnosis. After Brewer's response, the prosecutor did not further mention Brewer's illness. Therefore, the admission of the prosecutor's question and Brewer's limited response was not plain error.

## C. GREAT WEIGHT OF THE EVIDENCE

Defendant contends that the trial court erred when it denied his motion for new trial because the jury's verdict was against the great weight of the evidence. We disagree.

This Court reviews a trial court's decision on a motion for a new trial for an abuse of discretion. *People v Gadomski*, 232 Mich App 24, 27; 592 NW2d 75 (1998). "A verdict is against the great weight of the evidence and a new trial should be granted when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Solloway*, 316 Mich App 174, 182-183; 891 NW2d 255 (2016) (citations and quotations omitted). Conflicting testimony or questions regarding credibility are not sufficient grounds for relief unless the "testimony contradicts indisputable physical facts or laws," the "testimony is patently incredible or defies physical realities," the "testimony is material and . . . so inherently implausible that it could not be believed by a reasonable juror," or the "testimony has been seriously impeached and the case is marked by uncertainties and discrepancies." *People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998) (citations and quotation marks omitted).

Defendant maintains that the quality and quantity of the evidence presented at his trial, specifically the testimony of Brewer and Pratt, support a verdict of not guilty. Defendant correctly notes the importance of testimony from Brewer and Pratt, but fails to consider the jury's obligation to evaluate all of the evidence and this Court's role in respecting such a duty. See *Unger*, 278

Mich App at 232 (explaining that one of this Court's greatest hurdles is overruling a jury and granting a new trial).

Nevertheless, the record shows inconsistencies in some aspects of Brewer's testimony. For instance, on cross-examination, Brewer admitted to consuming alcohol before arriving at P and F Market on April 10, 2016, which contradicted her previous testimony during defendant's preliminary examination. Also, the record is unclear regarding how long Brewer was dancing in the parking lot between exiting P and F Market and the moment in which Love was first shot in the leg. Defendant generally contends that no res gestae witness[3] saw Brewer in the P and F Market parking lot. Despite these arguments and generalizations, defendant fails to explain in a thorough legal analysis how Brewer's testimony contradicts an indisputable fact or an element of first-degree premeditated murder. See *Lemmon*, 456 Mich at 643. Likewise, defendant points to no citation in the trial court record that shows how Brewer's testimony was of such a nature as to only be described as incredible, implausible, or seriously impeached. See *Lemmon*, 456 Mich at 643-644.

Moreover, Green testified that when he returned outside after running back into P and F Market, away from the gunfire, he saw Love underneath his vehicle, which was consistent with Brewer's testimony about what she witnessed after Love was shot in the leg. Jamar Hoking similarly testified that Love was under a vehicle, and that he helped pull Love out from underneath the vehicle and place him in the backseat. These accounts align with the burn injuries suffered by Love according to Dr. Virani. In addition, the testimony of Wallis supports Brewer's identification of defendant as a shooter. The jury heard testimony from Wallis that she overheard a phone conversation the day before the April 10, 2016 shooting when defendant told Love: "I know where you be at, I'm gonna get'cha." According to Pratt, defendant stated to him that he shot Love, and kept shooting at Love as he rolled under a vehicle.

Defendant's arguments regarding Pratt's testimony also lack merit. Defendant speculates that because he and Pratt were in the same gang, it is unlikely that he would have waited until 2017 to tell Pratt about his involvement in the shooting death of Love. However, no mention of gang involvement was presented to the jury. In addition, Pratt's motive for testifying and the plea agreement associated with his testimony were fully explored at trial. Based on these facts, and due to the lack of mandatory or persuasive authority in support of arguments against Pratt's testimony, defendant fails to provide this Court with a legal basis that shows how Pratt's testimony was implausible or impeached by other witnesses. See *Lemmon*, 456 Mich at 644.

In sum, because the verdict was not against the great weight of the evidence, the trial court did not abuse its discretion when it denied defendant's motion for a new trial.

## D. IMPOSITION OF COSTS AND CRIME VICTIM'S FEE

Defendant challenges the trial court's imposition at sentencing of $408 in costs and a crime victim's fee of $130. Specifically, defendant argues that the trial court erroneously believed that

---

[3] A "res gestae witness" is one "who, having been at the scene of an incident, can give a firsthand account of what happened." *Black's Law Dictionary* (11th ed).

it did not have discretion to waive these costs and fee. We disagree. Because defendant did not object to these costs and fee at sentencing, this issue is unpreserved. *People v Johnson*, 315 Mich App 163, 197; 889 NW2d 513 (2016). Therefore, review is limited to plain error affecting defendant's substantial rights. *Id.*

The challenged costs were imposed pursuant to MCL 769.1j(1)(a). Contrary to what defendant argues, imposition of those costs was mandatory under MCL 769.1k(1)(a) ("The court *shall impose* the minimum state costs as set forth in section 1j of this chapter.") (Emphasis added.) Likewise, the crime victim's fee of $130 was imposed pursuant to MCL 780.905(1)(a), which similarly provides that the court "shall order" a person convicted of a felony to pay that fee. Accordingly, the trial court properly assessed the challenged costs and fee.

## E. INEFFECTIVE ASSISTANCE OF COUNSEL

This Court now turns to seven arguments that defendant's trial attorney was ineffective— three raised by defendant's appellate counsel and four by defendant in his Standard 4 brief.

The United States and Michigan Constitutions guarantee that in all criminal prosecutions the accused shall enjoy the right to effective assistance of counsel. *People v Kammeraad*, 307 Mich App 98, 122; 858 NW2d 490 (2014). Arguments based on ineffective assistance of counsel present "a mixed question of fact and constitutional law." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007) (quotation marks and citation omitted). "Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo." *Id*. When a defendant does "not move in the trial court for a new trial or an evidentiary hearing, this Court's review is limited to mistakes apparent from the record." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

To prove that his or her trial attorney was ineffective, "a defendant must show that (1) the lawyer's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for the lawyer's deficient performance, the result of the proceedings would have been different." *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id*., quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). This Court presumes effective assistance of counsel; the criminal defendant "bears a heavy burden of proving otherwise." *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016).

Regarding trial strategy, "[d]efense counsel must be afforded 'broad discretion' " because of the necessity to take calculated risks to win a case. *People v Pickens*, 446 Mich 298, 325; 521 NW2d 797 (1994). "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *Id*.

"In general, the failure to call a witness can constitute ineffective assistance of counsel only when it 'deprives the defendant of a substantial defense.' " *Id*., quoting *People v Hoyt*, 185 Mich App 531, 537-538; 462 NW2d 793 (1990). "We will not substitute our judgment for that of

-10-

counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *Payne*, 285 Mich App at 190 (quotation marks and citation omitted). However, "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Our Supreme Court has recognized that "[t]he Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade." *People v Mitchell*, 454 Mich 145, 164; 560 NW2d 600 (1997) (quotation marks and citation omitted).

In this case, defendant contends that his trial attorney was ineffective for not objecting to the prosecutor's statements that defendant argued vouched for Brewer's credibility, bolstered her testimony, and mischaracterized the testimony of Brewer and Wallis. Defendant also contends that his trial attorney was ineffective by not objecting to the prosecutor's closing arguments that addressed the testimony of Brewer and Pratt, in which each discussed possible consequences of testifying in open court. Because defendant failed to raise these claims in his motion for a new trial or, in the alternative, a request for a *Ginther*[4] hearing, our review is limited to mistakes apparent on the record. *Heft*, 299 Mich App at 80.

As discussed, the prosecutor's closing arguments were not improper, and defendant has failed to show this Court how his trial attorney acted unreasonably by declining to object. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Moreover, the trial court's final jury instructions were sufficient to protect defendant's rights to the extent that the prosecutor's remarks could be perceived as inaccurate. Because of this, and defendant's lack of a proper legal analysis of this issue, defendant has not shown this Court that there is a reasonable probability that the verdict would have been different had his trial attorney objected to the prosecutor's statements.

In addition, defendant claims a new trial is warranted because his trial attorney admitted during sentencing that he "may have been" ineffective for not objecting to the prosecutor's question that elicited Brewer's cervical cancer diagnosis. However, despite defendant's argument to this Court, the analysis does not begin and end with his trial attorney's admission of possibly being ineffective. See *Anderson*, 322 Mich App at 628. Rather, it is the responsibility of this Court to evaluate the parties' arguments, and determine whether on this issue defendant's trial attorney was in fact ineffective.

Defendant does not cite to the trial court record an agreement between defendant and the prosecution regarding Brewer's cervical cancer diagnosis. Further, similar to defendant's other issues raised on appeal, he does not provide a substantive argument for this Court to conduct a thorough analysis. Despite this, the prosecutor's one question and Brewer's response were relevant for explaining to the jury why her appearance was different at the time of the April 10, 2016 internal surveillance footage of P and F Market and when she testified at defendant's trial on

---

[4] *People v Ginther*, 390 Mich 436, 442-444; 212 NW2d 922 (1973).

September 12, 2019.[5] Therefore, the performance of defendant's trial attorney was not objectively unreasonable when he did not object to the prosecutor's question regarding Brewer's appearance.

In his Standard 4 brief, defendant also raises three claims of ineffective assistance of counsel, none of which were raised below or supported by the record. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). First, defendant raises two similar claims of ineffective assistance of counsel involving the statutory 180-day rule, MCL 780.131(1). Defendant's arguments focus on trial counsel's request for an adjournment of trial because of a conflict with a scheduled vacation, which resulted in defendant being tried beyond the statutory 180 days.

"MCL 780.131(1) states the general rule requiring that an inmate housed in a state correctional facility who has criminal charges pending against him 'shall be brought to trial within 180 days after' the DOC delivers written notice of information concerning the inmate's imprisonment to the prosecuting attorney." *People v Lown*, 488 Mich 242, 255; 794 NW2d 9 (2011). However, our Supreme Court has "long held that to commence action within the 180-day period, a prosecutor need not ensure that the *trial* actually begins, or is completed, within that period." *Id*. at 256-257. Instead, "the prosecutor must have undertaken action—or, put otherwise, begun proceedings—against the defendant on the charges (or the 'matter')." *Id*. at 257. "If . . . apparent good-faith action is taken well within the period and the people proceed promptly and with dispatch thereafter toward readying the case for trial, the condition of the statute for the court's retention of jurisdiction is met." *Id*., quoting *People v Hendershot*, 357 Mich 300, 304; 98 NW2d 568 (1959).

Here, defendant appears to only argue that he was entitled to be tried within the 180-day period, which is incorrect. Defendant does not otherwise explain how he was prejudiced by the adjournment of trial, and has not provided any basis for concluding that there is a reasonable probability that the outcome of his trial would have been different without an adjournment. Therefore, defendant's ineffective-assistance claim on this basis fails.

Defendant's next ineffective assistance of counsel claim focuses on his assertion that his trial attorney failed to call three alibi witnesses and also failed to subpoena four jail prisoners, each of whom allegedly could have provided favorable testimony. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which we will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (quotation marks and citations omitted). However, when an ineffective assistance of counsel claim is premised on an attorney's failure to call an alibi witness, the defendant must demonstrate that the witness would have provided favorable testimony. *Pickens*, 446 Mich at 327.

In this case, defendant offers no details of what testimony the alleged alibi witnesses would have provided. Further, he has not presented any affidavits or other offer of proof indicating what

---

[5] In contrast, over the course of multiple questions, defendant's trial attorney questioned Brewer about her change in memory, which led to Brewer referencing her treatment and medications for cervical cancer.

testimony these individuals would have provided if called. Nothing in the record supports a finding that defendant's proposed alibi witnesses would have provided favorable testimony if called at trial. Because defendant has failed to establish the factual predicate for this claim, it cannot succeed. *Id.*

Similarly, defendant has not presented any affidavits from the jail witnesses showing what testimony they would have provided if called. Although defendant asserts that these witnesses were "willing to testify that [defendant] did not admit to any crime that Brandon Pratt testif[ied] to," Pratt did not testify that other inmates were involved in the conversation between he and defendant when defendant made his confession, and the mere fact that defendant did not admit anything to other inmates would not make it more or less probable that he made an admission to Pratt. Accordingly, there is no basis for concluding that the failure of defendant's trial attorney to subpoena the jail witnesses was objectively unreasonable, or that there is a reasonable probability of a different outcome if these witnesses had been called.

Defendant also contends that his trial attorney was ineffective for failing to question the medical examiner about "the caliber/bullet and weapon that cause[d] the death of [Love] in this case." Indeed, Dr. Virani was not questioned about the caliber of bullets removed from Love's body; however, his autopsy report was admitted into evidence and available for the jury to review. Further, Ronald Crichton, a firearms and tool mark examiner, testified that both .45-caliber and 7.62-by-39 casings were found at the crime scene.

Moreover, although unclear, defendant appears to claim that because Brewer testified that she saw defendant with an assault rifle,[6] he could not have killed Love because the fatal shot came from a .45-caliber weapon. However, defendant offers no citation to the trial court record in support of this contention. Additionally, defendant offers this Court no authority or similar set of facts that led to a successful ineffective assistance of counsel claim warranting an evidentiary hearing or new trial. Again, defendant may not simply announce a position, or make various inferences, and think that this Court will expand on those arguments and agree with his ineffective assistance of counsel claim. See *Mitcham*, 355 Mich at 203.

### F. REMAINING CLAIMS IN DEFENDANT'S STANDARD 4 BRIEF

Additionally, defendant alleges juror bias, and that the trial court erred when it denied his motion for dismissal without a hearing. We disagree with defendant on both claims.

### 1. JUROR BIAS

Defendant seeks a new trial because some members of the jury expressed a fear of his supporters, which according to defendant demonstrates that the jury had already formed an opinion that he was guilty. Because defendant's trial attorney raised this issue on the record during the hearing on his motion for a new trial, and due to the trial court's failure to rule on this issue, his

---

[6] In fact, Brewer identified defendant as a shooter, but offered conflicting testimony at trial about whether she saw a gun.

-13-

claim of juror bias is preserved for appellate review. See *Klooster v City of Charlevoix*, 488 Mich 289, 310; 795 NW2d 578 (2011).

A defendant in a criminal trial has a constitutional right to be tried by an impartial jury. US Const, Am VI; Const 1963, art 1, § 20; *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008). "Jurors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence." *People v Johnson*, 245 Mich App 243, 256; 631 NW2d 1 (2001). Whether a defendant was denied the right to an impartial jury is a constitutional question reviewed de novo. *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012).

Here, defendant has not provided factual support for his juror bias claim. Defendant does not cite to the record where this issue allegedly was discussed, or any affidavit or other statement from his trial attorney, jurors, or court personnel. While the trial court discussed Brewer's discomfort with some of the persons inside the courtroom, and provided a cautionary instruction, no mention was made of any juror feeling afraid or uncomfortable. To reiterate, "[i]t is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Bass*, 317 Mich App 241, 276; 893 NW2d 140 (2016) (quotation marks and citations omitted). Accordingly, defendant's argument fails.

## 2. HEARING ON MOTION FOR DISMISSAL

Finally, defendant contends that the trial court erred by failing to hold a hearing on his pretrial motion for dismissal. A trial court's decision whether to grant a motion to dismiss is reviewed for an abuse of discretion. *People v Brown*, 330 Mich App 223, 229; 946 NW2d 852 (2019). Underlying questions of statutory interpretation are reviewed de novo. *People v Clark*, 330 Mich App 392, 415; 948 NW2d 604 (2019). The principles of statutory construction also apply to the interpretation of court rules. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009).

Defendant cites MCL 767.26,[7] MCL 767.29,[8] and MCR 6.104,[9] but fails to explain how these statutes apply to his claim of error. Although defendant asserts that the trial court was required to hold a hearing on his dismissal motion, he provides no actual discussion of this issue and does not indicate which court rules required a hearing. In addition, defendant does not provide any analysis of the cases he cites in his Standard 4 brief, or explain how each supports his argument

---

[7] MCL 767.26 addresses the discharge of an accused in the absence of an indictment.

[8] MCL 767.29 states, in relevant part: "A prosecuting attorney shall not enter a nolle prosequi upon an indictment, or discontinue or abandon the indictment, without stating on the record the reasons for the discontinuance or abandonment and without the leave of the court having jurisdiction to try the offense charged, entered in its minutes."

[9] MCR 6.104 outlines the requirements for arraignments on warrants or complaints. Of note, defendant generally references MCR 6.104 and does not cite to any subsection.

that the trial court's failure to hold a hearing entitles him to appellate relief. This Court will not conduct such an analysis on his behalf. See *Bass*, 317 Mich App at 276 (quotation marks and citations omitted).

Affirmed.

/s/ Michael F. Gadola
/s/ David H. Sawyer
/s/ Michael J. Riordan